**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Andrea Middleton,<br><br>　　　　Plaintiff,<br><br>v.<br><br>City of Tucson,<br><br>　　　　Defendant. | No. CV-15-00185-TUC-JGZ (BGM)<br><br>**ORDER** |

On July 18, 2017, Magistrate Judge Bruce G. Macdonald issued a Report (R&R) (Doc. 69) recommending that the Court grant Defendant City of Tucson's motion for summary judgment (Doc. 53). Judge Macdonald concluded that Plaintiff Andrea Middleton's hostile work environment claim is barred by the statute of limitations and that no reasonable juror could find from the facts that Middleton's resignation was a result of discrimination.

On August 16, 2017, Middleton filed objections to the R&R. (Doc. 72.) Middleton asserts that her harassment claim is timely because Tucson Police Department (TPD) employee Frank Greene's texts to Plaintiff during her paid administrative leave were part of a continuing pattern of harassment, which brought all of her harassment claims within the statute of limitations under the continuing violation theory. (Doc. 72 at 3.) As to her constructive discharge claim, Middleton asserts Judge Macdonald improperly resolved a factual dispute regarding her motivation to resign. (Doc. 72 at 9.) Defendant filed its response on September 5, 2017. (Doc. 75.)

After an independent review of the record, the Court will adopt the R&R and grant Defendant's motion for summary judgment.

## I. LEGAL STANDARDS

### A. Review of Report & Recommendation

When reviewing a Magistrate Judge's R&R, this Court conducts "a de novo determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991) (*citing Britt v. Simi Valley Unified Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983)). Failure to object to a Magistrate Judge's recommendation relieves the Court of conducting de novo review of the Magistrate Judge's factual findings; the Court then may decide the dispositive motion on the applicable law. *Orand v. United States*, 602 F.2d 207, 208 (9th Cir. 1979) (citing *Campbell v. United States Dist. Ct.*, 501 F.2d 196 (9th Cir. 1974)).

### B. Summary Judgment

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Factual disputes that have no bearing on the outcome of a suit are irrelevant to the consideration of a motion for summary judgment. *Id*.

Where the nonmoving party bears the burden of proof on an issue at trial, summary judgment is proper where the moving party shows an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In order to withstand a motion for summary judgment, the nonmoving party must present

"specific facts showing that there is a genuine issue for trial." *Id.* at 324. "[A] mere scintilla of evidence" does not preclude the entry of summary judgment. *Anderson*, 477 U.S. at 252. Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### C. Hostile Work Environment Claim

A hostile work environment claim involves a workplace atmosphere so discriminatory and abusive that it unreasonably interferes with the job performance of those harassed. *Brooks v. City of San Mateo*, 229 F.3d 917, 923 (9th Cir. 2000). To establish a prima facie case of hostile work environment, a plaintiff must show that: "(1) she was subjected to verbal or physical conduct of a sexual nature, (2) the conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007) (quoting *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995)). The plaintiff must demonstrate that her work environment was both subjectively and objectively hostile; that is, she must show that she perceived her work environment to be hostile, and that a reasonable person in her position would perceive it to be so. *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1034 (9th Cir. 2005). "Objective hostility is determined by examining the totality of the circumstances and whether a reasonable person with the same characteristics as the victim would perceive the workplace as hostile." *Craig*, 496 F.3d at 1055 (citations omitted). Whether the alleged conduct created an objectively hostile work environment requires assessment of all of the circumstances, "including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Clark Cty. Sch. Dist. v. Breeden,* 532 U.S. 268, 270–71 (2001).

## II. FACTUAL BACKGROUND

The parties do not challenge the Magistrate Judge's factual findings. (Doc. 72, at 10; Doc. 75.) Middleton objects to the R&R's characterization of the facts, arguing that it downplays the abusive nature of her relationship with Greene. (Doc. 72 at 1.) Middleton further objects that the R&R fails to identify the November 2009 incident as work-related harassment.[1] (Doc. 72 at 2.) No other objections were raised as to the remainder of the R&R's factual findings, and hence the factual findings are adopted as supplemented herein. (Doc. 69.)

## III. ANALYSIS

The Court finds that Middleton's hostile work environment claim is barred by the statute of limitations. The only incidents of alleged discrimination that occurred within the statute of limitations period are Greene's 2013 text messages. The text messages do not constitute a continuing violation because they are not sufficiently related to the alleged discriminatory acts of 2009-2012. Moreover, Middleton has not demonstrated that TPD had notice of the alleged discrimination. The Court further concludes that Middleton's constructive discharge claim cannot survive summary judgment because no reasonable juror could find that Middleton's working conditions at home on administrative leave were so objectively intolerable as to compel her resignation.

**A.  Plaintiff's Hostile Work Environment Claim is Barred by the Statute of Limitations**

A Title VII plaintiff must file a charge with the Equal Employment Opportunity Commission ("EEOC") either 180 or 300 days after the alleged unlawful employment practice occurred. *National R. R. Passenger Corp. v. Morgan*, 536 U.S. 101, 104-05 (2002). Middleton filed her claim with the Arizona Civil Rights Division on December 20, 2013. Three hundred days prior to the December 20, 2103 filing date, is February 24, 2013. Thus, absent some exception, Middleton's claims of discrimination prior to that

---

[1] Because the Court finds, like the Magistrate Judge, that Middleton's claim is barred by the statute of limitations, *see infra,* Section III.A, it also does not evaluate whether the November 2009 incident qualifies as workplace harassment.

date are time barred.

Middleton acknowledges that the majority of the acts of alleged discrimination occurred between 2009 and 2012 — outside of the limitations period. She argues, however, that her hostile work claim is timely, pursuant to the continuing violation doctrine, because certain acts of discrimination (Greene's text messages) occurred after February 24, 2013. (Doc. 72, pp. 2-3, 5-6.)

To survive summary judgment under a continuing violation theory, a plaintiff must "demonstrate only that genuine issues of material fact exist as to whether the acts about which he complained were 'part of the same actionable hostile work environment practice, and if so, whether any act [fell] within the statutory time period.'" *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 818 (9th Cir. 2002) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002)) (defendant employer's assignment of discriminatory mandatory overtime during actionable time period constituted continuing violation of employer's discriminatory physical and verbal abuse levied outside violations window). Courts apply a relatedness test to determine if an incident occurring within the statute of limitations period is part of a continuing violation rather than a discrete act. *Morgan*, 536 U.S. at 117. Under the relatedness test, courts consider all of the circumstances to determine if multiple incidents "involve[d] the same type of employment actions, occurred relatively frequently, and were perpetrated by the same managers." *Id.* at 120. Changes in circumstances, such as an employer's intervention, can sever a hostile environment claim from discrete later actions. *Id.* at 113 ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."); *Gonzalez v. County of Yolo*, 2015 WL *4419025 (E.D. Cal. July 17, 2015) (finding that complainant's change in job assignments and subsequent minimization of contact with alleged harasser disrupted the continuing nature of the violation and rendered later acts distinct from earlier acts.)

//
//

- 5 -

1. Greene's 2013 Text Messages Do Not Constitute a Continuing Violation by the City of Tucson

Middleton has failed to show a material issue of fact exists as to whether Greene's 2013 texts were part of a pattern of harassment continuing from 2009. Applying the *Morgan* relatedness test, the Court concludes that the 2009-2012 incidences of discrimination are related to one another: they occurred frequently, were perpetrated by the same individual, and were similar in nature. According to Middleton, during this time period Greene regularly monitored her work activities and subjected her to verbal abuse and threats regarding her work decisions. As a result of Greene's behavior, Middleton frequently altered her work behavior, including failing to respond to calls while on duty; at least once, she noticed Greene observing her from his unmarked police car while she was on duty; and Greene's abusive behavior included violence. (Doc. 69, pp. 11-17.) Middleton and Greene were also romantically involved during this time period.

In contrast, the only acts of alleged discrimination occurring within the limitations period (after February 24, 2013), were texts sent by Greene to Middleton while she was at home on administrative leave. In the texts Greene asked whether she was married or had gotten more tattoos; wished her happy Valentine's and Mother's Days; and sent her lyrics from a song relevant to their relationship that "made him sad." (Doc. 69, p 22.) These texts differ qualitatively and quantitatively from the prior incidents on record. Although a reasonable juror might find that Middleton subjectively found the texts intimidating, the texts were infrequent and were not of the same controlling, abusive nature as Greene's earlier conduct. In fact, the holiday greetings, song lyrics, and inquiries into her marital and tattoo status are markedly different from Greene's allegedly controlling, vulgar, and abusive conduct during their 2009-2012 relationship.

Moreover, changed circumstances separate the 2013 text messages from Greene's earlier on-the-job conduct. First, Middleton was on administrative leave at her home starting in November 2012. (Doc. 69, pp. 22, 24.) Second, Middleton was no longer involved in a relationship with Greene. To the extent that there is evidence that Greene

maintained a level of control over Middleton during their relationship from 2009-2012, nothing on record indicates that Greene asserted similar control over Middleton or her working conditions after the relationship ended or while she was on administrative leave. In fact, Middleton's claim that Greene's 2013 communications "made her feel like he was trying to *draw her back* under his monitoring and control" suggests that she was not, in fact, under his control in 2013. (Doc. 60, ¶ 85.) Notably, Greene was not Middleton's supervisor and had not held supervisory authority over Middleton since August 2009. Moreover, unlike Greene's alleged behavior in 2009-2012, Greene's text messages after February 2013 did not directly interfere with Middleton's workplace conduct to the point that she ceased to fully perform her work duties. The texts were not offensive or discriminatory, and Middleton was on administrative duty. Accordingly, the Court concludes that the 2013 texts cannot reasonably be considered a continuation of an ongoing pattern of harassment that began in 2009.

 2. <u>Middleton Failed to Show that the Tucson Police Department Knew or Should Have Known of the Existence of a Hostile Work Environment</u>

In addition to being time barred, Middleton has not identified a triable issue of fact regarding TPD's notice of the harassment.

"An employer may be held liable for creating a hostile work environment either vicariously (i.e., through the acts of a supervisor) or through negligence (i.e., failing to correct or prevent discriminatory conduct by an employee)." *Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 688 (9th Cir. 2017). An employee is a supervisor for the purposes of vicarious liability only if "he or she is empowered by the employer to take tangible employment actions against the victim" such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Vance v. Ball State Univ.*, 570 U.S. 421, 430-31 (2013).

Middleton argues that TPD is vicariously liable for Greene's conduct because she believed Greene retained supervisory authority over her even after he was no longer her direct supervisor (Doc. 66, p. 2; Doc. 60, ¶ 4.) Although Middleton asserts that Greene,

as a high ranking authority, had apparent authority over her, she fails to produce any evidence that TPD empowered Greene with such authority. The record is void of evidence that Greene had the power to hire, fire, promote, reassign, or otherwise change Middleton's work benefits after August 2009.

If "the harasser is merely a co-worker, the plaintiff must prove that the employer was negligent, *i.e.* that the employer knew or should have known of the harassment but did not take adequate steps to address it." *Swinton v. Potomac Corp.*, 270 F.3d 794, 803 (9th Cir. 2001) (citing *Nichols v. Azteca Restaurant Enterprises, Inc.*, 256 F.3d 864 (9th Cir. 2001). An employer is on notice of harassing conduct when a plaintiff complains about the conduct or if another employee reports the conduct and the plaintiff cooperates in a subsequent investigation. *See, e.g.*, *Reynaga*, 847 F.3d at 688; *EEOC v. Prospect Airport Servs., Inc.*, 621 F.3d 991, 1001 (9th Cir. 2010). An employer is not on notice if lower-level supervisory employees are aware of pervasive harassment, but higher-ranking city officials are never informed. *See Faragher v. City of Boca Raton*, 524 U.S. at 783, 808 (1998).[2]

Middleton has not produced evidence showing that TPD had actual or constructive notice of Greene's discriminatory conduct but failed to take steps to remedy it. Middleton cites statements made by Sergeant Trusko and Captain Gillooly. Neither statement suggests knowledge of Greene's workplace harassment of Middleton. Sgt. Trusko's comment that Middleton "had a target on her back" after the 2009 investigation shows only a knowledge of the domestic violence incident and resulting investigation. (Doc. 60, ¶ 32.) Captain Gillooly's comment that Middleton's relationship was ruining

---

[2] *See also Vance*, 570 U.S. at 466 (Ginsburg, J., dissenting) ("an employee may have a reputation as a harasser among those in his vicinity, but if no complaint makes its way up to management, the employer will escape liability under a negligence standard." (citing 1 B. Lindemann & P. Grossman, *Employment Discrimination Law* 1335-1343 (4th ed. 2007)).) Thus, the fact that Middleton's TPD co-workers advised her to end her toxic romantic relationship is insufficient to impute knowledge of hostile workplace conditions to TPD supervisors.

her career does not indicate an awareness that Greene was harassing Middleton based on her sex or that he was interfering with Middleton's work performance. (Doc. 60, ¶ 69.)

Middleton avers that she informed a TPD supervisor during an internal affairs investigation that she failed to respond to a fellow officer's request for back-up because of Greene's jealousy and the resulting toxic work environment. (Pl. Resp. to Mot. Summ. J., Ex. 1, Doc. 60-1, ¶ 65.) However, her Declaration is directly contradicted by her recorded responses in the August 2010 investigation, when Middleton denied, multiple times, that Greene influenced her failure to provide backup or her work performance generally. (Doc. 54-1 at 71-73, 75.) *See Scott*, 550 U.S. at 380 (court should not adopt version of facts blatantly contradicted by the record). Moreover, the evidence suggests that Middleton deliberately refrained from disclosing the alleged harassment and even took steps to conceal it. She lied to investigators about the extent of Greene's abusive conduct during TPD's 2009 investigation into the domestic violence incident. In 2010, Middleton dishonestly attributed her poor work performance to a different co-worker. (Doc. 69, pp. 9-10, 18-19.) In fact, Middleton admits that she did not report Greene's "history of continuing verbal abuse and monitoring of her work activities to TPD management or the City's EEO office." (Doc. 69, p. 18; Doc. 60, ¶¶ 75, 76.)

The evidence viewed most favorably to Middleton shows that the earliest that TPD had notice of Greene's alleged harassment was on February 4, 2013, when Middleton's attorney wrote a letter to TPD regarding the pending administrative investigation into her work misconduct. (R&R at 24.) The letter stated that Greene and Middleton had been in a controlling relationship in which Greene monitored Middleton's daily work activities, confronted her about working with other males, appeared without cause at crime scenes where she was working, had previously threatened to use his position in TPD to get Middleton fired, and forced her to conceal signs of his physical abuse toward her. (*Id.* at 25.) The letter asked TPD to consider these facts in mitigation and resolution of the investigation. (*Id.*) The letter did not mention any continuing contact by Greene, such as

text messages.³ Middleton was already on administrative leave at that time, separated in the workplace from Greene, and the letter was sent outside of the limitations period.

In sum, from the facts on record, a reasonable juror could not find that TPD knew or should have known of the harassment but failed to take adequate steps to address it.

**B.	No Reasonable Juror Could Find that Plaintiff Resigned as a Result of Discrimination**

Middleton argues that Magistrate Judge Macdonald improperly resolved a question of fact when he found that her June 12, 2013 resignation was not a constructive discharge compelled by intolerable working conditions. According to Middleton, the fact that she was aware she likely faced discipline or termination does not preclude her from having reasonably concluded that the ongoing harassment compelled her to resign.⁴ (Doc. 72, p. 3.) The Court finds that a reasonable person could not conclude that ongoing harassment compelled Middleton's resignation.

A "constructive discharge occurs when the working conditions deteriorate, *as a result of discrimination,* to the point that they become sufficiently extraordinary and egregious." *Atwood v. Consol. Elec. Distributors, Inc.*, 231 F. App'x 767, 769 (9th Cir. 2007) (emphasis in original). To survive summary judgment on a constructive discharge

---

³ Middleton asserts that she complained to Internal Affairs in the spring of 2013 about Greene's continuing texts and messages and asked Internal Affairs to make Greene refrain from contacting her. (Doc. 60-1, ¶¶ 79-81, 89.) TPD's awareness of the texts in the spring of 2013, however, does not save Middleton's hostile work environment claim. As discussed in Section III.A, Greene's 2013 text messages are not actionable acts of discrimination.

Middleton also argues that the Magistrate Judge erred in concluding that Greene's 2013 texts could not alter the conditions of her employment while on administrative leave because her home was her workplace. (Doc. 69, p. 31; Doc. 72, pp. 4-5.) The Court acknowledges that in some instances actions occurring outside of the workplace may qualify as violations of Title VII. S*ee Fuller v. Idaho Dept. of Corrections*, 865 F.3d 1154, 1162 (9th Cir. 2017); *Lapka v. Chertoff*, 517 F.3d 974, 983 (7th Cir. 2008). However, the Court need not decide whether Greene's 2013 texts altered the conditions of Middleton's workplace because the Court concludes that Greene's 2013 texts were not discriminatory and therefore were not actionable.

⁴ Middleton's letter of resignation cites two reasons for her resignation: continual abuse by Greene *and* TPD's lack of response to her complaints. (Doc. 54-1 at 107, Ex. J.) Middleton's Opposition to the Motion for Summary Judgment and her Objection to the R&R focus on the first reason and gloss over the claim that TPD failed to respond to Middleton's complaints. In fact, as noted in Section III.A.2, there is no evidence that Middleton made timely complaints to TPD about Greene's abusive conduct.

- 10 -

claim a plaintiff must present facts sufficient to allow a reasonable person to find that the working conditions were so objectively intolerable as to compel resignation. *Brooks,* 229 F.2d at 930.

Middleton has failed to demonstrate a triable issue of fact exists as to whether her working conditions had deteriorated in June 2013, *as a result of discrimination*, to the extent that a reasonable person would feel compelled to resign. First, the proximity between Middleton's resignation and the events she claims made her working environment intolerable is unreasonably tenuous. Middleton's personal relationship with Greene ended in November 2012. Between November 2012 and Middleton's resignation in June 2013, Middleton identifies no harassing behavior outside of Greene's text messages, none of which was independently outwardly threatening or harassing in nature. As discussed in Section III.A, the texts were not of a sexual nature or sufficiently severe or pervasive to alter Middleton's conditions of employment and create an abusive working environment. No reasonable person could find that the texts made Middleton's work environment so intolerable as to compel her resignation.

Second, in the months preceding Middleton's June 13, 2013 resignation, her work environment had changed significantly. Middleton was placed on administrative leave in November 2012, her work environment was her home, and she had no work responsibilities. Further she was not required or expected to interact with Greene, the sole source of the alleged harassment.

Moreover, in contrast to Greene's alleged harassing conduct from 2009 - 2012, or even Greene's texts in the spring of 2013, there is a close proximity between Middleton's resignation on June 13, 2013, and Middleton's prosecution for computer tampering. Middleton was indicted on charges on May 31, 2013, and she resigned the day before her scheduled arraignment on June 14, 2013. Given the imminence of the criminal charges and their close relation to her employment with TPD, no reasonable juror could conclude that a handful of text messages from Greene over the course of a seven-month paid administrative leave was the impetus for Middleton's resignation. *See Montero v. AGCO*

*Corp.*, 192 F.3d 856, 861 (9th Cir. 1999) (summary judgment against a plaintiff may be appropriate when the alleged harassment ends months before a resignation); *Satter v. Washington Dept. of Ecology*, 462 Fed. App'x 685, 687 (9th Cir. 2011) (record does not support claim that a reasonable person in plaintiff's position would be forced to resign where plaintiff did not tender her resignation while the complained-about circumstances were present, but tendered her resignation only when faced with disciplinary action "up to and including discharge."). Accordingly, summary judgment is proper on Middleton's constructive discharge claim.

## IV. CONCLUSION

THEREFORE, IT IS ORDERED THAT:

1. The Report and Recommendation of Magistrate Judge Macdonald (Doc. 69) is APPROVED AND ADOPTED;
2. Defendant's Motion for Summary Judgment (Doc. 53) is GRANTED;
3. Plaintiff's Objection to the R&R (Doc. 72) is OVERRULED;
4. This matter is DISMISSED. The Clerk of the Court shall enter judgment and close the case.

Dated this 31st day of March, 2018.

_____
Honorable Jennifer G. Zipps
United States District Judge